***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with modifications to the calculation of plaintiff's average weekly wage.
 ***********
The Full Commission finds as fact and concludes as matters of law which were entered into by the parties at the hearing before the deputy commissioner and after the hearing as
 STIPULATIONS
1. The parties are subject to and bound by provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. Defendant is a duly qualified self-insured with ACE USA/ESIS as the Administrator.
4. The employee's average weekly wage is an issue.
5. The employee sustained an injury on or about December 13, 1996, with the exact date to be determined by the Industrial Commission.
6. The injury of December 13, 1996 arose out of and in the course of employment and is compensable.
7. The parties stipulate into evidence as Stipulated Exhibit #1, the pre-trial agreement as amended and initialed by the parties.
8. The parties stipulate into evidence as Stipulated Exhibit #2, Industrial Commission Forms 18, 19, 33, 33R.
9. The parties stipulate into evidence as Stipulated Exhibit #3, medical records.
10. The parties stipulate into evidence as Stipulated Exhibit #4, payroll records.
11. The parties stipulate into evidence as Stipulated Exhibit #5, IRS/tax returns 1996 through 2001.
12. The parties stipulate into evidence as Stipulated Exhibit #6, job description.
13. The parties stipulate into evidence as Stipulated Exhibit #7, defendant's answers to plaintiff's first set of interrogatories and production of records.
14. The depositions of Dr. Neal A. Jewell, Chris Shifflet and Rodney Geohaggen were received and admitted into evidence.
 ***********
Based upon all the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was twenty-seven years old. Plaintiff was employed by defendant, Oakwood Homes from July 8, 1996 through August 14, 1998, when she was terminated. Prior to working for Oakwood Homes, plaintiff attended college but did not graduate or receive a degree. However, plaintiff did obtain her pilot's license. Plaintiff worked as a waitress, in the fast food industry and as a pharmacy technician. Plaintiff was first hired by Rodney Geohaggen, her supervisor, to work as a sales person in the Jacksonville, North Carolina location. Plaintiff transferred from the Jacksonville, North Carolina location to the Johnson City, Tennessee location in October of 1997 where she was first under the supervision of Terry Brandt, then later, Chris Shifflet.
2. Plaintiff was injured on December 13, 1996 when she was moving cement blocks and experienced a sharp pain in her lower back. This claim was accepted as compensable and the plaintiff received medical treatment from a chiropractor and Dr. James Markworth, an orthopaedic surgeon.
3. Following the incident on December 13, 1996, plaintiff was able to continue working with defendant with restrictions given to her from Dr. Markworth.
4. At the time plaintiff was hired by defendant her pay consisted of a weekly draw of $275.00 per week. On the week ending October 6, 1996 her draw was increased to $325.00 per week.
5. The plaintiff and other sales persons were paid by commission. It was the policy of Oakwood Homes to pay a weekly draw against any potential earned commissions. Commissions were based upon a percentage of the gross profit for the sale. To be paid a commission, the sales person must be the one who closes the sale. Commissions were calculated monthly based upon the sales closed by the end of the month. The draw received up through the date the commissions were calculated was then deducted from the commissions earned, and the sales person was paid the balance. Sales persons who continued to receive a draw and did not earn commissions to cover the draw would generally be terminated. The point of termination was often determined on the sales person history of sales and the sales pending in the "pipeline". Plaintiff was aware of this policy by defendant.
6. After being hired plaintiff was required to attend a training course by defendant. Plaintiff was paid a draw of $275.00 per week during this time. Plaintiff was not allowed to sell until her training was complete. Plaintiff finished her training and was allowed to begin to sell sometime in August 1996.
7. Plaintiff received her first commission pay after the deduction for the draw through that year on December 30, 1996, two weeks after her compensable injury by accident. The commission was the result of sales plaintiff had made prior to her injury but was not computed until the end of the month. Plaintiff continued to steadily receive commission through the end of 1997. Plaintiff earned a total of $31,454.00 in 1997, the only time she worked a full year with defendant.
8. At the hearing before the deputy commissioner, defendant was ordered to provide wage information for comparable employees who worked with plaintiff at the Jacksonville location for purposes of showing wages for a like employee. Defendant provided instead wage information for the top ten sales persons in the company, which reflected earnings ranging from $81,000.00 per year to $153,000.00 per year. These earning are not reflective of the earnings of a person of the same grade and character employed in the same class of employment in the same locality or community.
9. In October 1997, plaintiff requested defendant transfer her to Johnson City, Tennessee. Her request was granted and plaintiff began work at the Johnson City sales facility.
10. On December 18, 1997, plaintiff began treatment with Dr. Neal A. Jewell, orthopaedic surgeon. At that time Dr. Jewell indicated that plaintiff had received all conservative treatment available and that her last option was surgery. Plaintiff declined surgery and was given work restrictions by Dr. Jewell.
11. The evidence indicates that plaintiff's sale manager, Terry Brandt, and his successor, Chris Shifflett, were aware of plaintiff's back injury and her work restrictions. The evidence indicates that plaintiff was able to continue working within her restrictions.
12. On August 14, 1998, plaintiff was terminated by defendant. Plaintiff was terminated for lack of production as her sales were too low. Consequently, as a result she was "too far in the draw". During this same period of time that plaintiff was terminated, two other sales persons located at the Johnson City, Tennessee location were also terminated for lack of production. Plaintiff was not terminated by defendant due to her work-related back injury.
13. Plaintiff returned to Dr. Jewell on September 11, 1998 at which time she reported that she had been fired by her previous employer and had returned to work as a mobile home salesperson for another company. Plaintiff reported she was working six to eight hours per day, six days per week, essentially full time with this new employer. According to Dr. Jewell, on September 11, 1998, plaintiff had improved to the point where she had no pain when her legs were lifted to the full position. Dr. Jewell stated that plaintiff's improvement from her July 13, 1998 visit to her September 11, 1998 visit was such that there was a potential for further improvement and the removal of all her restrictions in six months.
14. Dr. Jewell determined that plaintiff had reached maximum medical improvement on September 11, 1998, and that full-time work was acceptable for plaintiff within her restrictions, which Dr. Jewell had extended temporarily for at least six months. Dr. Jewell released plaintiff to be seen back on an as-needed basis, six months if desired by plaintiff to recheck her restriction status.
15. Plaintiff did not seek a follow-up with Dr. Jewell to recheck her work restriction status following September 11, 1998. Dr. Jewell has rated plaintiff with a ten percent (10%) permanent partial disability rating to her back.
16. There has been no evidence presented that plaintiff has sought further medical treatment following September 11, 1998, with any doctor regarding her compensable back injury, nor that plaintiff has been taken out of work by any doctor regarding her back injury since September 11, 1998.
17. Plaintiff has been represented by plaintiff's attorney since August 19, 1998. Plaintiff's I.C. Form 18 was filed with the Industrial Commission on September 18, 1998. Plaintiff filed an I.C. Form 33, request for hearing, with the Industrial Commission on January 13, 2000. On this Form 33, one of the issues presented was that plaintiff had been denied medical treatment and payment. Prior to January 13, 2000, there has been no evidence presented that plaintiff has sought or requested further medical treatment regarding her compensable back injury, and that defendant had denied such request.
18. Plaintiff returned to work following her termination by the defendant with another mobile home sales center, Capital Homes, and she worked in that position until October 1998 at which time she voluntarily resigned. There is no medical evidence substantiating any additional medical treatment at that time due to her back, either stating that she was unable to perform her sales position, or that took her out of work due to her back injury.
19. Plaintiff has failed to prove by the greater weight of the competent credible evidence and medical evidence of record that her December 13, 1996 compensable back injury resulted in any disability.
20. Plaintiff is entitled to have defendant provide all medical treatment necessitated by her December 13, 1996 compensable injury.
21. Plaintiff has reached maximum medical improvement, and has been assigned a ten percent permanent partial disability rating to her back.
22. Plaintiff had worked less than a year at the time of her compensable injury by accident. Due to the nature of commission sales work, fair and just results cannot be obtained by calculating the average weekly wage based on the actual weeks plaintiff worked prior to her injury of December 13, 1996. No evidence has been presented of the average weekly wage of an employee of the same grade and character as plaintiff and in the same locality or community earned in the fifty-two weeks preceding plaintiff's injury by accident. For the foregoing reasons, since calculating plaintiff's average weekly wage by any of the foregoing methods would be unfair to both the employee and employer, the Full Commission finds that plaintiff's earnings in 1997 reflect her true earning capacity. It is determined that plaintiff's average weekly wage as of December 13, 1996 was $604.88, which yields a compensation rate of $403.27.
 ***********
Based upon the following foregoing stipulations and findings of fact the Full Commission makes the following
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove by the greater weight of the evidence that she has suffered any disability as a result of her compensable December 13, 1996 injury by accident. N.C. Gen. Stat. § 97-2(9).
2. Plaintiff had worked less than 52 weeks at the time of her compensable injury by accident, therefore her average weekly wage cannot be calculated by use of the first or second methods provided in N.C. Gen. Stat. § 97-2(5). Due to the nature of commission sales work and when commissions are calculated by defendant, fair and just results cannot be obtained by calculating the average weekly wage based on the actual weeks plaintiff worked prior to her injury of December 13, 1996, the third method provided in N.C. Gen. Stat. § 97-2(5). No evidence has been presented of the average weekly wage of an employee of the same grade and character as plaintiff and in the same locality or community earned in the fifty two weeks preceding plaintiff's injury by accident therefore it is impossible to calculate plaintiff's average weekly wage according to the fourth method provided in N.C. Gen. Stat. § 97-2(5). Calculating plaintiff's average weekly wage by any of the foregoing methods would be unfair to the employee, therefore, for these exceptional reasons, the Full Commission determines that plaintiff's earnings in 1997 reflect her true earning capacity. It is determined that plaintiff's average weekly wage as of December 13, 1996 was $604.88, which yields a compensation rate of $403.27. N.C. Gen. Stat. § 97-2(5).
3. Plaintiff has reached maximum medical improvement, and has been assigned a ten percent permanent partial disability rating of her back. N.C. Gen. Stat. §§ 97-2(9), 97-31.
4. Plaintiff is entitled to have defendant provide all medical treatment necessitated by her December 13, 1996 compensable injury. N.C. Gen. Stat. §§ 97-25, 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Plaintiff's claim that she is entitled to any past temporary total disability compensation or temporary partial disability compensation as a result of her compensable injury by accident on December 13, 1996 is hereby DENIED.
2. Plaintiff is entitled to have defendant pay her permanent partial disability rating of ten percent to her back at a rate of $403.27 per week for a thirty-week period. This amount is due and payable and shall be paid in a lump sum. This award is subject to a reasonable attorney's fee approved in paragraph #3.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph #2 of this award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
4. Defendant shall pay all medical expenses incurred by plaintiff as a result of her compensable injury when bills for same have been submitted to and approved by the Industrial Commission, for so long as such may reasonably be required to effect a cure, and give relief or lessen plaintiff's period of disability.
5. Defendant shall pay the costs.
This the 2nd day of June 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER